UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RAMON FELIX, *individually and on behalf of all others similarly situated*,

                              Plaintiff,

-v-

BREAKROOM BURGERS & TACOS et al.,

                              Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/16

15 Civ. 3531 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On February 18, 2016, the parties submitted a second application for approval of a proposed settlement agreement in this Fair Labor Standards Act ("FLSA") action. Dkt. 31. The Court declined to approve the first application because the parties did not provide sufficient information about the bona fides of the dispute or sufficient documentation supporting the requested attorneys' fees. *See* Dkt. 28. The Court also raised concerns about the settlement agreement's confidentiality provision and the breadth of the release. Having reviewed the parties' present submission,[1] the Court declines to approve the Agreement in its present form principally because it contains a restrictive and one-sided non-disparagement provision. The Court will allow the parties either to (1) remove the provision, (2) more narrowly tailor it, or (3) submit an argument (with authority) supporting the present provision. The Court also remains concerned about the breadth of the release included in the present Agreement.

---

[1] The parties submitted a joint letter ("Letter"), Dkt. 32; the proposed settlement agreement ("Agreement"), Dkt. 31; and plaintiff's counsel's billing records ("Invoice"), Dkt. 32, Ex. 1.

## I. Background

Plaintiff Ramon Felix brought federal and state minimum-wage, overtime, and other claims against defendants arising from his employment at Breakroom Burgers & Tacos ("Breakroom"). Dkt. 1 ("Compl."). In return for settling these claims, under the proposed Agreement, Felix is to receive $11,666,67, while Felix's counsel is to receive $5,833.33. Agreement ¶ 2. In exchange, Felix would release defendants from liability for all claims "arising out of the within Action, including . . . all claims regarding [Felix's] employment." *Id.* ¶ 9. The Agreement further provides that Felix will not "negatively comment on, disparage, or call into question the business operations, policies, or conduct of Defendants," nor "act in any way that would likely damage Defendants' reputation, business relationships, [or] present or future business," nor "comment about Defendants to any person or entity concerning such business operations, policies or conduct except as required by law or as necessary for [Felix] to defend himself in any [proceeding]." *Id.* ¶ 11.

## II. Discussion

### A. Approval of the Settlement Agreement

Under the FLSA, any employer that violates the requirement to pay minimum or overtime wages "shall be liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). Rather, the parties must satisfy the Court that their agreement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, No. 15 Civ. 3068 (WHP), 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Factors weighing against settlement approval "include the following: (1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Id.* (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

Several of these factors strongly support approval of the proposed settlement, and none disfavor it. As to the range of possible recovery, the amount Felix would receive under the Agreement ($11,666,67) is a substantial proportion of the maximum possible recovery he identifies ($46,748.85). *See* Letter at 1. Importantly, this maximum possible recovery is far from inevitable, should this case proceed to trial. Defendants have raised a serious question about whether Breakroom had gross annual receipts in excess of $500,000, as required for application of the FLSA. *See id.* at 2. Defendants also claim to have produced records showing

that Felix worked substantially fewer overtime hours than he claimed, such that his recovery (not taking into account the possibility of liquidated damages, which defendants dispute) would be only $1,129.50. *Id.* The parties also note concerns about collectability. *Id.* While the Court would have benefited from more detail on this point, the sincerity of the parties' concern is demonstrated by defendants' consent to a confession of judgment in the amount of $26,250 in the event of a material breach of the Agreement. Agreement ¶ 5. In light of these litigation risks, the decision to forgo the burden and expense of trial is clearly reasonable.

None of the four factors that weigh against settlement approval appear to be present. For instance, no similarly situated employees have been identified. However, the Court would benefit from clarification as to whether Felix still works at Breakroom. The Complaint (filed in May 2015) alleges that he remains employed, Compl. ¶ 21, but the Letter suggests that he does not. Whether Felix still works for Breakroom is relevant to determining whether there is a likelihood of recurrence and whether Felix may have been unduly pressured to settle. *See Cisneros v. Schnipper Rest. LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) (concerns about coercion "not as relevant when the plaintiffs no longer work for the defendant").

The above-listed factors are not the only considerations that courts weigh in deciding whether to approve an FLSA settlement. One significant consideration is whether the agreement includes any provisions that undermine the broad remedial purposes of the FLSA, such as an overbroad non-disparagement provision. *See Cheeks*, 796 F.3d at 207 (holding that judicial review of proposed settlements serves "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees"). The present Agreement's non-disparagement provision forbids Felix to

4

"negatively comment on, disparage, or call into question the business operations, policies, or conduct of Defendants," to "act in any way that would likely damage Defendants' reputation, business relationships, [or] present or future business," and to "comment about Defendants to any person or entity concerning such business operations, policies or conduct except as required by law or as necessary for [Felix] to defend himself in any [proceeding]." Agreement ¶ 11. No mirror-image non-disparagement provision binds defendants.

Non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 WL 7871036, at *3 (S.D.N.Y. Dec. 3, 2015). If a provision broadly bars plaintiffs from making any negative comments about defendants, as the present Agreement does, "it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). No such carve-out is offered here. "Without this exception, Defendants could argue that Plaintiff would violate the agreement by informing other employees—who may not be aware of their rights under FLSA—of the company's failure to pay the wages required by law." *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15 Civ. 4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015). Such potential silencing of FLSA plaintiffs ill-serves Congress's broad remedial purposes. *See Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15 Civ. 814 (RA), 2015 WL 9077172, at *1 (S.D.N.Y. Dec. 15, 2015); *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015); *see also Cheeks*, 796 F.3d at 206 (citing favorably to *Lopez*, which disapproved "a battery of highly restrictive confidentiality provisions," including a broad non-disparagement clause (quoting 96 F. Supp. 3d at 177)).

The Court also remains concerned about the breadth of the release in the present Agreement. While the release appears to have been somewhat narrowed since the parties' initial submission, it still requires Felix to release defendants from liability for all claims—including claims that he "may have in the future"—"arising out of the within Action, including . . . all claims regarding [Felix's] employment." *Id.* ¶ 9. This release is not pellucid, but it appears that it would cover "claims based upon breach of contract, tort, equity, implied contract, wrongful termination, defamation, intentional infliction of emotional distress, sexual harassment, tortious interference with contract, assault, battery, violation of public policy, negligence and/or any other common law, statutory or other claim whatsoever arising out of or relating to [Felix's] employment with and/or separation from employment with defendants." *Lazaro-Garcia*, 2015 WL 9162701, at *2 (disapproving such a release). In this Circuit, courts routinely reject broad releases in FLSA cases of "unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez*, 96 F. Supp. 3d at 181.

Therefore, although the Agreement as revised has cured some of the previous deficiencies, it has not cured all, and the Court cannot approve the Agreement at this time. The parties are directed (a) to clarify whether Felix still works at Breakroom; (b) to remove, narrowly tailor, or attempt to justify the non-disparagement provision; and (c) to narrowly tailor the release to wage-and-hour claims or present argument and authority for the present release.

## CONCLUSION

For the foregoing reasons, the Court declines to approve the proposed settlement. However, if the parties satisfactorily address the Court's concerns about the non-disparagement provision and the broad release, and if the Court is satisfied that Felix's employment status at Breakroom does not pose a risk of coercion or recurrence, the Court expects to approve the

settlement. The parties are directed to submit a revised settlement agreement and joint letter by March 29, 2016, addressing the Court's concerns.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 8, 2016
       New York, New York